### SECURITY–FIRST NAT. BANK OF LOS ANGELES v. BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N et al.

### In re F. P. NEWPORT CORPORATION, Limited.

#### No. 9262.

Circuit Court of Appeals, Ninth Circuit.

April 15, 1940.

---

---

W. C. Shelton and George W. Burch, Jr., both of Los Angeles, Cal., for appellant.

Edmund Nelson, Hugo Steinmeyer, Wm. H. Neblett, and J. Merrill Brown, all of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order in bankruptcy directing payment of attorney's fees from certain oil lease proceeds as compensation for legal services rendered in defending the bankrupt's title to the land from which the oil lease proceeds were derived.

F. P. Newport Corporation, Ltd., referred to herein as Newport Corporation, became indebted to Security-First National Bank of Los Angeles, referred to herein as the Bank, and conveyed by trust instrument certain property as security for the indebtedness. Included in the property given as security were two parcels of real property in California the title to which was in litigation. The law firm of McAdoo & Neb-

lett had agreed to represent the Newport Corporation in this title litigation for a fee of $25,000 contingent upon its successful termination.

Subsequently, on May 13, 1933, the Bank, the Newport Corporation and McAdoo & Neblett entered into an agreement concerning, inter alia, the further conduct of the litigation by McAdoo & Neblett. It was provided by this agreement that: "McAdoo & Neblett shall faithfully conduct all legal work in the above entitled case of Middleton v. Newport, et al., Case No. 158914, until final judgment is rendered therein." And that: "* * * the Bank agrees * * * upon the execution of a proper note therefor, to pay to McAdoo & Neblett, to apply upon their attorney's fees in the above mentioned litigation, the sum of ten thousand dollars ($10,000.00). Such sum to be an advance by the bank, as Trustee, * * * for the benefit of said Trust Estate, and to be secured as provided by the terms of said trust." And that: "Provided McAdoo & Neblett are successful in establishing, by final judgment, the contentions of F. P. Newport, in the above entitled action No. 158914, the Bank agrees to advance for the benefit of the trust estate in said Trust No. 70401, and to pay over to McAdoo & Neblett the further sum of seven thousand, five hundred dollars ($7,500.00) in full settlement of their attorney's fees, *insofar as this Bank* is concerned, * * *."

Pursuant to this agreement the Bank advanced on behalf of the Newport Corporation the $10,000 attorney's fee. This advance was paid to McAdoo & Neblett.

On March 19, 1935, before the title litigation was concluded, and involuntary petition in bankruptcy was filed against the Newport Corporation and a receiver was appointed.

After the involuntary bankruptcy petition had been filed, but before the title litigation had been concluded, McAdoo & Neblett petitioned the district court for approval of the $25,000 contingent fee contract. The court ordered that McAdoo & Neblett be permitted to continue their employment in the litigation and that no order or decision be made at that time concerning the fee.

Upon successful termination of the title litigation the Bank advanced to Newport Corporation the additional $7,500 which was paid by the Bank to McAdoo & Neblett. Thereafter, on May 5, 1936, pursuant to

stipulation of counsel including counsel for the Bank, the court ordered that the fee of McAdoo & Neblett be fixed at $25,000 less the sum of $17,500 that already had been paid and that the balance be paid by the receiver during the course of the administration of the bankrupt estate. The Newport Corporation was adjudicated bankrupt January 12, 1937.

A contract, originally dated January 12, 1937, and later twice amended, and as last amended approved by the court, was entered into between the Bank, the receiver and the Newport Corporation concerning the handling of funds collected by the court from leases of the property securing the Bank's loan, including leases later made of the property whose title had been made secure by the services of McAdoo & Neblett. We later discuss this amended agreement.

Subsequently, the trustee in bankruptcy and the Bank, as lessors, entered into an oil lease of the property which had been the subject of the title litigation. The lessee successfully developed oil and gas on the property and substantial monthly royalties have been paid over to the trustee in bankruptcy and by him deposited in the special oil account as provided by the agreement of January 12, 1937, as modified.

McAdoo & Neblett assigned their claim to the $7,500 fees to appellee Bank of America and the latter petitioned the referee in bankruptcy to order the trustee in bankruptcy to pay the $7,500. The appellant Bank opposed the payment. The referee found that the trustee did not have funds other than the oil lease proceeds sufficient to pay the $7,500, concluded that the Bank of America was not entitled to payment out of the oil lease proceeds and denied the petition. On review, the district court reversed the order of the referee and directed the trustee to pay the $7,500 out of funds received by him by virtue of the oil and gas lease. From this order the appeal is taken.

Appellant contends that the order confirming the contract of January 12, 1937, as modified, constitutes an order that all oil lease proceeds be paid to the Bank to be applied upon its indebtedness and precludes the later order, now complained of, directing payment of the $7,500 fee from such proceeds. We find no merit in this contention.

■ ■ The first modification of the contract of January 12, 1937, was by a supplemental agreement of August 31, 1937. The supplement provided that the collections by the trustee of the income from the leases of lands securing the Bank's loan should be impressed with the lien of the trust instrument and "shall not become any part of the general assets of the Bankrupt Estate, nor charged with the payment of any of the expenses of administering said Bankrupt Estate, * *." This supplemental agreement with approval of the court, on October 9, 1937, was in turn modified by an exception to the provision for the impression of the trust lien on the trustee's collections and that they should not be a part of the general assets of the estate nor "charged with the payment of any expenses of administering said Bankrupt Estate." The latter phrase was struck out. The exception for the first time in the succession of agreements provides for attorney's fees. It reads: "* * No provision of said agreement of January 12, 1937, or this supplement thereto is made or entered into directly or indirectly, for the purpose of fixing the amount of the fees or other compensation to be paid to any party in interest or any attorney of any party in interest in this bankruptcy proceeding, *for services rendered in connection therewith or otherwise,* and the fixing and *determination* of any fees or compensation *to be paid* to anyone whomsoever *from the assets of this Bankrupt Estate,* is, in accordance with the law, *left entirely to the determination of the court* having jurisdiction of this bankruptcy proceeding, unaffected by any provision, term or condition, express or implied, of said contract of January 12, 1937, or of this supplement thereto." (Emphasis supplied.)

We construe the words "determination of any fees or compensation to be paid to anyone whomsoever from the assets of this Bankrupt Estate, is, in accordance with the law, left entirely to the determination of the court having jurisdiction of this bankruptcy proceeding," to be an agreement that in determining attorney's fees to be paid, the court shall be deemed to be causing them to be paid in accordance with law if paid from *any* of the "assets of this Bankrupt Estate" to which the attorney's services have contributed.

The deletion of the provision of the August supplemental agreement that the collections shall not be regarded as general assets charged with administration expenses and the substitution of the last quoted lang-

uage seems to us intended as a recognition, *at that time,* of the skillful and valuable services rendered to the property securing the Bank's loan by the firm of McAdoo & Neblett.

The consent by the Bank in the above agreement of October, 1937, to the payment to McAdoo & Neblett from the collections, is not to be disregarded because the Bank later concluded to object to such a payment for the services it described as "a most creditable piece of professional work on said case, winning a complete victory in the case."

The above makes it unnecessary for us to consider the Bank's contention that in the absence of the agreement and its modification, the court would not have the power so to treat its collections from the income of the leases of the land securing the Bank's loan.

Concerning the contract between the Bank, the Newport Corporation and McAdoo & Neblett which was entered into in 1933, long before the involuntary bankruptcy petition was filed, we do not regard it as a bar to the order made by the court. Under that contract the Bank agreed to advance $10,000 to Newport Corporation to pay McAdoo & Neblett and, upon successful termination of the litigation, to advance to Newport Corporation an additional $7,500 to be paid McAdoo & Neblett "in full settlement of their attorney's fees, *insofar as this Bank is concerned,* in said action." (Emphasis supplied.) The Bank's concern was, first, as to advances to be made by it to Newport Corporation to be secured by an enhancement of Newport Corporation's debt; and, second, since at that time the Bank's claim against Newport Corporation was greatly in excess of the security, the advance primarily aided the Bank in protecting its security. There was no provision whereby McAdoo & Neblett agreed to accept $17,500 in full settlement of their attorney's fees insofar as the Newport Corporation was concerned. The 1933 contract did not preclude the court, under whose approval McAdoo & Neblett continued their services after the petition in bankruptcy had been filed, from fixing a reasonable attorney's fee for those services even though it be in excess of $17,500.00.

Affirmed.