UNITED STATES of America,
Plaintiff-Appellee,

v.

Joanne MEHTALA, Defendant-Appellant.

No. 77–1308.

United States Court of Appeals,
First Circuit.

Argued Feb. 13, 1978.

Decided June 26, 1978.

Charles A. Cordero, Santurce, P. R., by appointment of the court, for defendant-appellant.

Jose A. Quiles, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL and MOORE,* Circuit Judges.

MOORE, Circuit Judge:

Joanne Mehtala appeals from a conviction by a jury verdict, upon an indictment, charging her and six others with violation of 21 U.S.C. § 963, charging that on or about July 22, 1975, in the District of Puerto Rico and elsewhere, defendants aiding and abetting each other, knowingly and intentionally did attempt to import into the United States from a place outside thereof approximately fifty pounds of marijuana, a Schedule I controlled substance.[1] The other individuals indicted also were convicted, but the convictions of four crew members of the involved vessel, were reversed by this court for insufficiency of evidence. *United States v. Francomano*, 554 F.2d 483 (1st Cir. 1977).[2] The district court found that Mehtala was a young adult offender under 18 U.S.C. § 4216, and as provided under 18 U.S.C. § 5010(a), suspended the imposition of sentence and placed her on probation for a period of three years.

Miss Mehtala's trial had been severed from the others due to the illness of her counsel. At the close of the Government's case she moved for acquittal; the motion was denied. The appellant then rested without presenting evidence, and again moved for acquittal and an arrest of judgment, both of which were denied. After the verdict of guilty by the jury, appellant moved for a judgment notwithstanding the verdict, for a new trial, and for an arrest of judgment. The district court, on May 21, 1977 (after the decision in *Francomano*, entered on May 3, 1977), denied the motions for acquittal and for arrest of judgment, the motion for a new trial having been withdrawn. Appellant seeks reversal on the grounds that the evidence was insufficient to prove the government's case-in-chief and that appellant's notebook was erroneously admitted into evidence. For reasons hereinafter stated, we hold that the court erred in denying the motions for acquittal, reverse the judgment of conviction and remand with an order to dismiss the indictment.[3]

On July 22, 1975, the United States Coast Guard cutter Diligence was patrolling the Mona Passage area, an international waterway. The cutter was engaged in a Multi-Unit Law Enforcement Patrol ("MULE-PAT"), and in addition to its regular Coast Guard crew, carried Felix Jimenez, a Drug Enforcement Administration agent and Harold Johnson, an United States Customs Patrol officer. The Diligence's radar detected, at about 2:45 in the afternoon, a ship approximately ten miles away. The cutter dispatched its helicopter to investigate the ship. As the helicopter approached the ship, the Double Eagle,[4] the pilot noticed some objects in the water 25 to 50 yards directly astern of the ship. At the same time the pilot noted Mehtala, in a two-piece bathing suit, lounging at the rear of the Double Eagle. On that pass the pilot noticed that six people, including Mehtala, were on the deck. The other people were

---

* Of the Second Circuit, sitting by designation.

1. Subject to certain exceptions not here relevant, 21 U.S.C. § 952 provides:

   "It shall be unlawful . . . to import into the . . . United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter . . . ."

   Marijuana is classified as a Schedule I controlled substance. 21 U.S.C. § 812(c), Schedule I(c)(10).

2. Defendant Walter Edwin Martian failed to perfect his appeal and his appeal was dis-missed by this court. The appeal of the captain of the vessel, Hugh MacQueen Boord, was not before that panel, 554 F.2d at 485.

3. Although appellant raises other issues concerning jurisdiction and whether documents were seized in violation of the Fourth Amendment, since our holding on the foregoing issues is dispositive of this case, no consideration of these issues is required.

4. The Double Eagle was a two-masted sailing schooner approximately 70 feet long.

standing, scattered around the afterdeck of the ship. The helicopter landed in the water and retrieved six floating packages. Five of the packages were wrapped in small plastic bags and weighed approximately two pounds each, while the sixth was wrapped in a burlap bag and weighed approximately 40 pounds. A field examination determined the contents of the packages to be marijuana.[5] The helicopter reported its findings to the cutter. Thereafter, at approximately 3:50 P.M., a search party boarded the Double Eagle for a "safety inspection and documentation".[6] No marijuana was found on board, but 2250 pounds of coffee in burlap bags and 2000 pounds of sugar were discovered.[7]

The Double Eagle was seized and the seven occupants arrested for conspiracy to import a controlled substance into the United States. They were immediately transferred to the Diligence and subsequently transported to Puerto Rico.

After the arrest at approximately 5:12 P.M., the two federal agents participated in a search of the ship. Jimenez seized a chart lying open and several maps from the steering compartment. The chart showed marks which, the Government contended, indicated that the Double Eagle was headed for Puerto Rico. Also at trial, evidence was presented which established that the Double Eagle was the only ship in the area. For purposes of this appeal we will assume that there is adequate evidentiary support for a finding that the marijuana retrieved by the helicopter came from the Double Eagle and that the Double Eagle was headed for Puerto Rico.

During the search of the Double Eagle by the agents, Jimenez also discovered a notebook in a drawer containing female clothes, located in the Captain's cabin. This was admitted into evidence after a motion to suppress the notebook was denied. The crucial issues to be decided in this appeal are whether the notebook was properly admitted into evidence and whether the Government presented sufficient evidence to support a jury finding that appellant knowingly and intentionally either acted as a principal, or aided and abetted principals, in attempting to import marijuana into the United States.

## I.

Appellant contends that the notebook was inadmissible into evidence because it was irrelevant, and if relevant, its prejudicial effect outweighed its relevancy. The Government argued at trial that the importance of the notebook was twofold: (1) it showed guilty knowledge on the part of Mehtala; and (2) it was like a logbook and showed the itinerary of the Double Eagle.

The notebook is in the form of a diary, containing short phrases describing the activities of Mehtala and her companions. As the district court stated, "It seems to me rather than anything else like a diary written by a schoolgirl in which phrases are used which have a lot of meaning to the person who wrote it, it brings back memories, but whoever reads it it [sic] means nothing." Extract of Trial 200. The probative value of the notebook, as to Mehtala's knowledge, is cast in doubt by an examination of its contents and by the comments of the district court:

"[I]t couldn't be more innocent as to the things that it says, the fact that they had a few drinks in one place, the fact that someone had a fight with someone else, that they had visitors aboard the vessel, that they danced, what's wrong with that? I don't see anything wrong with that." Id.

The Government bases its relevancy argument on a single cryptic passage from

---

5. The packages were produced and introduced at trial, and a qualified chemist testified that the contents were in fact marijuana.

6. At the time of boarding, the Double Eagle was approximately 15 miles southwest of Cabo Rojo, Puerto Rico. Since the Double Eagle was an American flag vessel, the Coast Guard had the authority to board the vessel on the high seas pursuant to 14 U.S.C. § 89.

7. This was a documentation violation because the Double Eagle was licensed as a pleasure yacht only, not as a cargo vessel.

the notebook. On July 10, 1975, the following was entered:

"I swim to shore and go to the river. Walking thru the villages in my bikini. Washer women. Mr. Jeffries apologizes. Head for Santo Domingo at 1600. Bad winds. Not talking to Hugh. Coast Guard at our stern. Goodbye to my dreams."

The Government contends that this passage indicates Mehtala's participation in the venture—the presence of the Coast Guard near the Double Eagle sunk Mehtala's dreams of success in the illicit venture. However, the relevancy of this phrase is reduced by its ambiguity. For example, the phrase could also be interpreted as Mehtala simply noting the presence of the Coast Guard,[8] and, in the last sentence, referring to some completely unassociated thoughts.

A second purpose of the notebook was to prove the itinerary of the Double Eagle. The itinerary was to indicate that the ship visited Colombia, a possible place to purchase marijuana, prior to being seized. But appellant offered to stipulate the route.

The diary contains passages which could have some negative effect on the jury. This prejudicial effect must be balanced against the diary's relevancy. The diary makes a reference to frivolous conduct by the appellant which could be looked upon negatively by jurors with particular sensitivities. The diary also contains a disparaging remark about Latin Americans, referring to them as "Horny Latin American Pigs".

■ The admissibility of the diary was thus an extremely close question for the trial court. Both relevance and prejudice were possibilities in uncertain ·measures. District court judges have broad discretion in determining the admissibility of evidence. *United States v. Fosher*, 568 F.2d 207, 213 (1st Cir. 1978); *United States v.*

*Eatherton*, 519 F.2d 603, 611 (1st Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975). Here the district court did not abuse its discretion in determining that the notebook was relevant. Likewise, the court did not abuse its discretion in determining that the prejudicial effect of the notebook did not outweigh its probative value.

## II.

■ The evidence, or lack thereof, offered by the Government, failed to prove any one of the three elements necessary for conviction of aiding and abetting, much less facts sufficient to prove appellant was a principal. To be convicted of aiding and abetting, more than "mere presence" at the scene is required. *United States v. Mariani*, 539 F.2d 915, 919 (2d Cir. 1976). As the Supreme Court stated in *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949):

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed'. L. Hand, J. in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1936)." *Id.* at 619, 69 S.Ct. at 770.

■ Appellant at the time of her arrest was a 20-year-old college graduate in marine biology. She began a three and one-half month adventure on March 26, 1975—a cruise through various ports-of-call in the Caribbean. The Government's entire case against appellant rested on circumstantial evidence. No evidence on the record indicates that Mehtala in any way associated herself with the criminal venture. No evidence indicates that appellant participated in the venture as something she wished to bring about. No evidence indicates that

---

**8.** This observation of Coast Guard presence was made twelve days before the boarding on July 22 and obviously could not have been written in reference to events on that date. Furthermore, the ship uneventfully passed through customs in Santo Domingo after the date of this entry in the notebook.

appellant took any action to make the venture succeed.[9]

Appellant had no control over the operation of the ship or the contents of its cargo. As was found in *Francomano*, the small packages of drugs were easily hidden. The Government presented neither evidence that Mehtala had any ownership interest in the marijuana, nor evidence indicating that appellant knew that the Double Eagle was being used to transport drugs.

The Government's entire proof consisted of Mehtala's presence on the ship throughout the voyage and inferences of a close relationship with the Double Eagle's captain. As this court stated in *Francomano*, "Doubtless the intimacy of association on a small vessel is a factor which, with others, could rather quickly add up to circumstantial proof of guilty knowledge . . . ." 554 F.2d at 487. However, other factors simply are not available here. No evidence indicates that Mehtala embarked on the voyage for any purpose other than a pleasure cruise. There is no indication that she had a prior association with the captain, that she used marijuana, or that she had been engaged in previous drug operations.

Even if through the supposed close relation between Mehtala and the Double Eagle's captain, Mehtala obtained knowledge of the presence of the marijuana, this knowledge would not be sufficient to convict her of aiding and abetting. "Mere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting." (citations omitted). *Francomano, supra*, at 486.

Finally, the Government presented no evidence that Mehtala took any affirmative action to further the venture. The helicopter pilot testified that the closest package was only 25 yards behind the Double Eagle when the pilot spotted it. Extract of Trial at 150. At the time of the radar sighting, the Double Eagle was proceeding at 11 knots. *Id.* at 175–76. At that speed, only a few seconds could have elapsed between the disposal of the marijuana and the sighting by the pilot. Yet, the pilot testified that he first sighted Mehtala lying down at the "back section of the boat", *Id.* at 153, and when asked if he saw Mehtala throw anything overboard, he replied, "No, I didn't". *Id.* at 170. Furthermore, evidence was presented that it would be difficult to throw a package over the stern of the Double Eagle because a dinghy was hanging at the stern, and a package must be hurled several feet to clear either the dinghy or the stern of the Double Eagle itself. Thus, the Government failed to prove, even circumstantially, that appellant aided in disposing of the marijuana, the only affirmative act for which the Government offered eye-witness testimony.

The burden is on the Government to prove the requisite elements of the crime. When the evidence is largely circumstantial the test is "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir. 1964). *See United States v. Gabriner*, 571 F.2d 48 (1st Cir. 1978); *Francomano, supra* at 486; *United States v. Concepcion Cueto*, 515 F.2d 160, 162 (1st Cir. 1975). Here the total evidence presented by the Government failed to prove its case-in-chief.

The conviction of appellant is reversed. This case is remanded to the trial court with direction to sustain the motions for acquittal filed by the appellant and to dismiss the indictment as to appellant.

*Reversed and remanded.*

---

**9.** No crew members and no one associated with the illicit venture testified against Mehtala.