**UNITED STATES of America, Plaintiff, Appellee,**

v.

**Jose Angel LUCIANO PACHECO, Defendant, Appellant.**

**UNITED STATES of America, Plaintiff, Appellee,**

v.

**Anthony John AUGUSTINE, Defendant, Appellant.**

Nos. 85–1349, 85–1469.

United States Court of Appeals, First Circuit.

Argued Feb. 6, 1986 in No. 85–1349.

Argued May 8, 1986 in No. 85–1469.

Decided June 20, 1986.

Harry R. Segarra-Arroyo, Santurce, P.R., for appellant Jose Angel Luciano Pacheco.

James A. Toro, San Juan, P.R., for appellant Anthony John Augustine.

Antonio R. Bazan, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

These consolidated appeals of José Angel Luciano-Pacheco ("Luciano") and Anthony John Augustine ("Augustine") arise from the conviction of each for aiding and abetting in the willful possession with intent to distribute 9,724 pounds of marijuana, a Schedule I controlled substance. *See* 18 U.S.C. § 2; 21 U.S.C. 955a(a), (b) & (f). Appellants' convictions followed from their arrest, along with five other defendants, on the stateless 55-foot vessel CAREY, which was boarded by the Coast Guard 200 miles northwest of Puerto Rico.[1]

On appeal, both Luciano and Augustine argue that their motions for severance were improperly denied. *See* Fed.R. Crim.P. 14. Luciano separately argues that his motion for acquittal, filed pursuant to Fed.R.Crim.P. 29 and challenging the sufficiency of the government's evidence, was improperly denied. For the reasons stated below, we reject the arguments of appellants and affirm the district court's rulings both as to severance and the sufficiency of the government's evidence.

I. *Severance*

■ Both appellants, Luciano and Augustine, moved for severance of their joint trial from that of co-defendant Idelfonso Cortés-Rosales ("Cortés") under Fed.R. Crim.P. 14. Appellants argued that Cortés' testimony would be to the effect that Luciano and Augustine jointly "captained" the CAREY, which was directly in conflict with appellants' proposed defense that they were mere "innocent bystanders" along for the ride. The district judge denied the motion in an opinion dated April 15, 1985, noting that antagonistic defenses do not per se require severance, *United States v. Davis*, 623 F.2d 188, 194 (1st Cir.1980), and that the conflict between Cortés' and appellants' testimony amounted to mere "tattling and fingerpointing." *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.1983). The district judge therefore concluded that the situation was not one where " 'the conflict is so prejudicial and the defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " *United States v. Bautista*, 731 F.2d 97, 100 (1st Cir.1984) (citing *United States v. Talavera*, 668 F.2d 625, 630 (1st Cir.1982) ).

On appeal, appellants point out that Cortés' testimony did portray them as masters of the ship, and again argue that this testimony, antagonistic to appellants' innocent bystander defense, generated sufficient prejudice so as to require us to reverse. We disagree.

It is well-settled in this circuit that the grant or denial of a Rule 14 motion is within the sound discretion of the trial court, and will only be reversed for an abuse of discretion. *United States v. Palow*, 777 F.2d 52, 55 (1st Cir.1985); *United States v. Bautista, supra* at 99–100; *United States v. Arruda, supra* at 679. Moreover, in order to demonstrate that a denial of a severance motion constitutes an abuse of discretion, "a party must make a strong showing of prejudice." *Bautista, supra* at 100; *Arruda, supra; United States v. Lochan*, 674 F.2d 960, 967 (1st Cir.1982). We see no such prejudice for three reasons.

First, appellants are wrong in arguing that co-defendant Cortés was the government's best witness against them, and that it was on Cortés' testimony that guilt or

---

1. Four of the five co-defendants, all of whom were Colombian nationals, pleaded guilty prior to trial. The fifth co-defendant, Idelfonso Cortés-Rosales, was tried along with Luciano and Augustine but, unlike appellants, was acquitted by the jury.

innocence turned. *See United States v. Johnson*, 478 F.2d 1129 (5th Cir.1973). As we noted in *Palow, supra* at 55 n. 1, *Johnson* is distinguishable where, as here, appellants' presence at the scene of the crime is undisputed. More importantly, *Johnson* is distinguishable because Cortés was *not* the government's best witness, or evidence, against appellants. Rather, Cortés' testimony was cumulative evidence of guilt not necessary for, or determinative of, the convictions below.

The government offered evidence below that Luciano and Augustine had travelled together on a flight from Miami to Colombia and then once again northbound on the CAREY. Appellants testified at trial that their joint travels were pure coincidence; however, the jury could easily have drawn the inference of purposeful collaboration between prime movers in the venture. Most importantly, the government offered evidence of the circumstances of the seizure—i.e., a 55-foot vessel, carrying a larger than normal crew and 9,724 pounds of readily accessible marijuana on a nonstop voyage of eight or nine days. Thus, because it is well-established that this latter circumstantial evidence *alone* suffices to support a conviction for aiding and abetting, *see United States v. Beltrán*, 761 F.2d 1, 6 (1st Cir.1985); *United States v. López*, 709 F.2d 742, 746–747 (1st Cir.), *cert. denied*, 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); *United States v. Smith*, 680 F.2d 255, 260 (1st Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983), Cortés' testimony cannot be said to have been outcome-determinative.[2] In short, the statements by co-defendant Cortés were at best cumulative of the government's case against appellants, and "[c]umulative evidence [of guilt] in the form of a co-defendant's testimony does not amount to prejudice justifying severance." *United States v. Palow*, 777 F.2d 52, 55 (1st Cir.1985).

Second, we reject appellants' contention that even if Cortés' testimony was cumula-

tive, it was so antagonistic as to generate a conflict which alone demonstrated that appellants were guilty. The conflict between appellants' and Cortés' testimony is undisputed. It had to do with who was the master of the ship and who was not. Thus, because Cortés was acquitted and appellants were convicted, appellants argue that the conflict in the testimony caused the jury "to believe one defendant at the expense of the other" such that "the conflict alone establishe[d] the guilt of [appellants]." *Arruda, supra* at 679.

We again disagree. The case on which appellants rely, *Arruda*, makes clear that "fingerpointing and tattling" do not suffice to justify severance. *Id.* Moreover, the quoted passage from *Arruda* specifically refers to *United States v. Talavera*, 668 F.2d 625, 630 (1st Cir.1982), where we reiterated the principle that " 'antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other.' " *Id.* (citing *United States v. Becker*, 585 F.2d 703, 707 (4th Cir.1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979)). Thus, since the need to believe one defendant over another will *always* occur in the face of antagonistic or fingerpointing defenses, this requisite credibility determination cannot be, and is not, the decisive factor. Rather, the need for severance turns on the *degree* of conflict, and the extent to which the antagonism goes beyond mere fingerpointing into the realm of fundamental disagreement over core and basic facts. *See United States v. Fusaro*, 708 F.2d 17, 25 (1st Cir.1983) (severance requires disagreement over the basic facts, the "who, what, when and where").

Applying the above standard, and with recognition that line-drawing in this area is especially difficult, we note that the essence of appellants' and Cortés' defense was arguably similar, since all three contended they were innocent passengers recruited by an anonymous Colombian. Moreover, the jury could have believed

---

2. *See* p. 11, *post* for a more elaborate discussion of the circumstances of the seizure and the extent to which such evidence suffices to support the convictions of appellants.

*both* Cortés and appellants, found that none of the three was the captain, and presumed the remaining Colombian nationals to have been the only knowing malefactors. Thus, we do not regard the differences between appellants and Cortés over who "captained" the CAREY as generating sufficient conflict and prejudice to warrant a severance. *See, e.g., United States v. Sheikh,* 654 F.2d 1057, 1065 (5th Cir.1981) (insufficient showing of prejudice where appellant and co-defendant both contend they had no knowledge of presence of heroin in display case, but each claimed the other was the owner of the case). Finally, we stress the appropriateness of our conclusion given that Cortés' testimony was cumulative of the government's case and not at all necessary for the jury to find appellants guilty. Thus, because Cortés' testimony was not outcome-determinative, we are reluctant to find the conflict generated by it to be "so prejudicial ... that the jury will unjustifiably infer that this conflict *alone* demonstrates that [appellants] are guilty," *United States v. Bautista, supra* (emphasis supplied).

Third and finally, we note that our conclusion is supported by the fact that the trial judge gave a cautionary instruction both immediately after Cortés' testimony and prior to dismissing the jury for deliberation. Moreover, counsel for each appellant was able to cross-examine Cortés thoroughly. These factors, we have previously noted, serve to minimize the prejudice below and are relevant to our considerations on appeal. *See United States v. Palow, supra* at 55.

Thus, because we find the antagonistic testimony of co-defendant Cortés to be of a cumulative and not outcome-determinative nature, and because we therefore conclude that the conflict generated was not so fundamental that it alone would dictate appellants' guilt, we reject appellants' contention that the district court abused its discretion in denying the motions for severance below.

## II. *Sufficiency of Evidence*

■ Appellant Luciano argues that, at best, the government's evidence established his "mere presence" on board the CAREY, and that presence alone is insufficient to support a conviction for aiding and abetting the willful possession with intent to distribute marijuana in violation of 21 U.S.C. § 955a(a), (b) and 18 U.S.C. § 2. For the reasons stated below, we disagree.

Our standard of review with respect to challenges to the sufficiency of the government's evidence is whether, taken as a whole and viewed in the light most favorable to the government, the evidence and all legitimate inferences therefrom would allow a rational trier of fact to find guilt beyond a reasonable doubt. *See United States v. Beltrán,* 761 F.2d 1, 6 (1st Cir. 1985); *United States v. Hensel,* 699 F.2d 18, 33 (1st Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *United States v. Patterson,* 644 F.2d 890, 893 (1st Cir.1981).

Applying the above standard to the government's proof below, it is clear that the evidence and permissible inferences therefrom support the jury's finding that Luciano aided and abetted in the unlawful importation of marijuana. As noted above, the government established that Luciano had flown to Colombia on the same flight as co-defendant Augustine. Luciano and Augustine testified that their joint presence on the flight was mere coincidence, that they met and became friends on the flight, and that, when sightseeing together in Colombia, they were robbed of their worldly possessions. According to their testimony, Luciano and Augustine then went to a bar where a stranger, overhearing their conversation in English, offered them a ride to Martinique on a "travel now, pay later" basis.

While the above "innocent passenger" defense is certainly within the realm of human possibilities, we have previously noted that juries are perfectly entitled not to believe what may be inherently incredible, and that a jury conclusion of fabrication by defendants can serve as additional evidence of guilt. *United States v. López,*

709 F.2d 742, 747 (1st Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); *United States v. Smith,* 680 F.2d 255, 260 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983).

In support of a jury conclusion that Luciano's defense constituted pure fabrication was the rest of the government's case. The government introduced a tape recording of radio transmissions between the Coast Guard Cutter SAGEBRUSH and a crewmember of CAREY, who at one point was identified as Joe Luciano.[3] The radio transmission revealed that the CAREY gave false and conflicting answers to standard Coast Guard questions regarding the home port of the vessel, the nature of the cargo and the number and nationality of the crewmembers. A consensual boarding was denied. The SAGEBRUSH then contacted the Government of the Bahamas only to discover that, contrary to the representations made over the radio, CAREY was *not* of Bahamian registry; rather, it was a stateless vessel. The Coast Guard then proceeded with the boarding.

The boarding officer requested that the captain identify himself and no one stepped forward. The boarding officer then requested the ship's documents which, after a delay, were provided by Luciano. Upon noting that the CAREY's documents and the number and nationality of the crew conflicted with the information earlier provided over the radio, the boarding officer ordered the crew to the bow of the vessel and a "sweep team" conducted a search. Upon opening the front and rear cargo holds, which were not locked, the sweep team detected a strong odor of marijuana and found 175 bales totalling 9,724 pounds of the contraband. The bales in the front cargo hold were also readily visible and accessible by opening a small, unlocked door on the ship's bridge. The boat was 55 feet in length, had no shower or toilet and living quarters for only a crew of four. The crew at the time of the boarding was seven, and their journey, largely unexplained, had proceeded nonstop from Santa Marta, Colombia for eight or nine days.

Under similar circumstances—i.e., lengthy journey, excessive number of crewmembers for size of vessel, and large quantity of marijuana in relation to size of vessel—we have held, along with other circuits, that an entirely permissible inference is that the crewmembers were not innocent passengers but rather knowing participants in a joint venture. *See United States v. Guerrero-Guerrero,* 776 F.2d 1071 (1st Cir. 1985); *United States v. Beltrán, supra* at 6; *United States v. Michelena-Orovio,* 702 F.2d 496 (5th Cir.1983); *United States v. Martínez,* 700 F.2d 1358 (11th Cir.1983); *United States v. Alfrey,* 620 F.2d 551 (5th Cir.), *cert. denied,* 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980). The rationale of these opinions is that, given the necessarily close relation of crewmembers cramped onto a vessel that is already crammed with marijuana, it is entirely reasonable for the jury to conclude that "conspirators engaged in conduct which by its nature is kept secret from outsiders, would reasonably not allow the presence of innocent bystanders in their midst while conducting a lengthy, illegal operation." *Beltrán, supra,* (citing *United States v. Smith, supra*); *United States v. López, supra; United States v. Quejada-Zurique,* 708 F.2d 857 (1st Cir.), *cert. denied,* 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983). Finally, we note that the above rationale, and the evidence underlying it, serve not only to support convictions as a co-conspirator but also convictions for aiding and abetting under 21 U.S.C. § 955a and 18 U.S.C. § 2. *Smith, supra* at 261; *United States v. Hathaway,* 534 F.2d 386, 399 (1st Cir.1976).

In an effort to distinguish the above case law, appellant Luciano relies on our previous decisions in *United States v. Mehtala,* 578 F.2d 6 (1st Cir.1978) and *United States v. Francomano,* 554 F.2d 483 (1st Cir. 1977). However, as we noted in *López, supra* at 747 n. 5, both *Mehtala* and *Francomano* are distinguishable based on the

---

**3.** Since Luciano testified at trial, the government correctly notes that the jury could have identified the voice on the recording as that of Luciano.

12

relatively small quantity of marijuana in those cases (40 pounds) compared to the size of the vessel (a 70 foot pleasure yacht), which rendered the marijuana easily concealable. The facts before us, however, involve approximately 4½ tons of largely unconcealed and readily accessible contraband on a cargo vessel of only 55 feet. Thus, in contrast to *Francomano* and *Mehtala*, the jury could easily have found that the quantity of marijuana aboard the CAREY could *not* be readily concealed from crewmembers. Rather, the amount was such that, when viewed in light of the length of voyage, number of crew and size of vessel, the logical and wholly permissible inference is one of a joint venture, with a *raison d'etre* of smuggling, known to all. Luciano, then, who by "pure coincidence" travelled hand-in-hand with co-defendant Augustine from Miami to Colombia and then onboard the CAREY with five Colombian nationals and a sizeable load of marijuana, has no basis to challenge the jury's permissible inference that he knew quite well what was going on. The government's case, in short, presented sufficient evidence to support a finding of guilt. Accordingly, we affirm the district court's denial of the Rule 29 motion below.

*Affirmed.*