**UNITED STATES of America, Appellee,**

v.

**John DOE, a/k/a, James Singleton, Defendant, Appellant.**

No. 88–1864.

United States Court of Appeals, First Circuit.

Heard Aug. 3, 1990.

Decided Dec. 13, 1990.

initiative.

---

**5.** Having shelved the ACCA on a different ground, the district court never ruled on this

**341**

Barbara A.H. Smith, by Appointment of the Court, with whom Quinlan, Dee & Smith, Boston, Mass., was on brief, for appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Carlos A. Perez, Asst. U.S. Atty., and Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., were on brief, for appellee.

Before SELYA and CYR, Circuit, and RE,* Judge.

RE, Chief Judge.

Appellant, John Doe, a/k/a James Singleton (Singleton), appeals from a judgment of conviction following a jury trial in the United States District Court for the District of Puerto Rico. Singleton was convicted of aiding and abetting in the possession with the intent to distribute marijuana in violation of 18 U.S.C. § 2 and 46 U.S.C. App. §§ 1903(a), (c), and (f).

Singleton contends that the district court erred in denying his Rule 29 motion for acquittal because it applied an improper standard to test the sufficiency of the evidence, and, therefore, found sufficient evidence for the case to go to the jury. Singleton further contends that the district court's imposition of a 360–month sentence

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

pursuant to the Sentencing Guidelines was fundamentally unfair.

We hold that the district court applied a correct standard of sufficiency, and that the evidence presented was sufficient to support the jury's verdict of guilty beyond a reasonable doubt. Furthermore, since the court complied with the Sentencing Guidelines, the 360–month sentence is not appealable. Hence, the judgment of the district court is affirmed.

## BACKGROUND

In April 1988, an indictment was returned by a federal grand jury in Puerto Rico against Singleton and five others who were arrested while on a ship. They were charged with aiding and abetting each other in the knowing, willful, and intentional possession with the intent to distribute approximately 3,500 pounds of marijuana in violation of 18 U.S.C. § 2, and 46 U.S.C. App. §§ 1903(a), (c), and (f). Singleton and the five other defendants were tried together before a jury. The jury found three guilty and three not guilty. Only Singleton's appeal is before us.

The testimony at trial revealed that on January 5, 1988, the United States Coast Guard Cutter *Dauntless* approached a vessel on the high seas off the coast of Cuba. Since the vessel was coming from the direction of Haiti, Ensign Pulver and other officers aboard the *Dauntless* discussed whether a boarding of the vessel was warranted because of possible immigration law violations. After having sighted the vessel, the *Dauntless* attempted to establish radio communication on two channels and in three languages. The *Dauntless* received no reply, and no electronic communication was established. On drawing closer to the vessel, Ensign Pulver saw on the vessel the name *Marilyn E* and some letters, but he could not see a home port designation or flag.

Ensign Pulver and the boarding party boarded a smaller Coast Guard vessel, and drew closer to the *Marilyn E.* At a distance of about thirty yards, voice contact was established, and someone on the vessel identified it as being from Jamaica.

Ensign Pulver requested and was given permission to board the *Marilyn E.* He was told by someone on the *Marilyn E* that there were seven people on board. This proved to be correct as all seven were arrested, although only six were indicted.

Upon boarding the vessel, Ensign Pulver asked for the certificate of documentation. In response to his request, he was given a bill of sale, which was an improper documentation. The "sweep team" searched the vessel, and Ensign Pulver asked what was in the hold. Willey Gordon, the master of the vessel, replied that there was ice in the hold. Ensign Pulver then requested and was given permission to open the hold. During this time, Singleton's only statement was that he was from the United States.

Upon opening the hold, Ensign Pulver discovered bales up to the top of the hold, and stated that he could tell by the smell that the bales contained marijuana. That the bales contained marijuana was later confirmed by a field test. At trial, other members of the Coast Guard testified that there were 102 bales of marijuana, weighing approximately forty pounds each. Ensign Pulver requested authority from the Commander of the *Dauntless* to arrest the persons on board the *Marilyn E.* Since the Coast Guard required the permission of the country of origin to arrest the persons on board the *Marilyn E,* they were asked if there were flags on board to show a registry. Willey Gordon replied that there were no flags. Singleton stated that he thought that there were flags in the forward section. Two flags were found in the forward section, one yellow and the other a United States flag.

Since the vessel was originally identified by someone on board as being from Jamaica, the Coast Guard requested that Jamaica grant permission for the arrests. While waiting for a reply, the persons on board the vessel slept. After several hours, the Coast Guard received permission from the Jamaican government and the commandant of the Coast Guard to make the arrests. The defendants were thereafter transfer-

red to the *Dauntless.* The *Marilyn E* was attached to the *Dauntless* by a towline, and both vessels proceeded toward Puerto Rico.

The testimony also revealed that the *Marilyn E* was in disrepair and ill equipped for fishing, or any other kind of long term travel. No fishing gear, refrigeration, ice, or back-up equipment was found on board. The vessel leaked and, indeed, during the trip to Puerto Rico, the *Marilyn E* sank.

At the close of the government's case, Singleton's motion for dismissal under Rule 29 was denied.

Although Singleton presented no evidence on his own behalf, his attorney examined his co-defendant, Willey Gordon. Gordon testified that Singleton asked him for a ride to the Bahamas because Singleton's girlfriend had destroyed his papers. Gordon told Singleton that he was not going to the Bahamas, but that he was going to "Cape Sol Bank." Gordon also told Singleton that the owner of the boat would have to give permission for Singleton to make the voyage. The owner, according to Gordon, gave permission for Singleton to be on the boat.

At the close of all evidence, Singleton renewed his Rule 29 motion, and the motion was again denied. The jury returned a verdict of guilty for Singleton and two others, and not guilty for the other three defendants.

On appeal, Singleton contends that the district court erred in denying his Rule 29 motion to dismiss for lack of sufficient evidence, and in imposing a 360–month sentence. Since we hold that the district court correctly denied Singleton's motion to dismiss, and that the imposition of the 360–month sentence is not appealable, the decision of the district court is affirmed.

## DISCUSSION

1. The Rule 29 Motion for Judgment of Acquittal

Rule 29(a) of the Federal Rules of Criminal Procedure provides that, on motion of a defendant, the court "shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."

Since Singleton made his Rule 29 motion to dismiss at the close of the government's case-in-chief, and since he renewed the motion at the close of all evidence, we will review all the evidence presented at trial to determine whether it was sufficient to support the jury's verdict of guilty beyond a reasonable doubt. *See United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir.1978).

Singleton is charged with aiding and abetting in the possession with the intent to distribute marijuana. In *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Supreme Court stated that "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Id.* at 619, 69 S.Ct. at 770 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938).

Although the evidence against Singleton is largely circumstantial, the standard to be applied is nonetheless "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir.), *cert. denied*, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964). Indeed, we have specifically stated that "in the context of review of a motion for acquittal, 'no legal distinction exists between circumstantial and direct evidence.'" *United States v. Clotida*, 892 F.2d 1098, 1104 (1st Cir.1989) (quoting *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C.Cir.1986)). Furthermore, it is unquestioned that direct evidence need not be presented. Judicial authority teaches that "the government can use circumstantial evidence as long as the evidence, viewed as a whole, is sufficient to warrant a reasonable jury to conclude that the defendant is guilty beyond a reasonable

doubt." *United States v. Machor*, 879 F.2d 945, 948 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990). *See also United States v. Glover*, 814 F.2d 15, 16 (1st Cir.1987). Finally, "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *See also United States v. Williams*, 858 F.2d 1218, 1221 (7th Cir.1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989).

■ In response to Singleton's allegation of error, we must state that we find no error in the colloquy between the district court and defense counsel on the Rule 29 motion. The district court, in denying the motion, merely inquired of defense counsel why the district court should find the government's evidence to be insufficient. This query does not, as Singleton asserts, "dilute the prosecution's burden of proof." Rather, the district court was merely affording defense counsel an opportunity to show why the government's evidence was insufficient for submission to the jury. After having heard the arguments of defense counsel, the district court denied the motion. *See Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978).

■ On appeal, Singleton again contends that the government's evidence is insufficient for a finding of guilt beyond a reasonable doubt. He asserts that the evidence fails to prove that he was anything more than a "hitchhiker" on the *Marilyn E.* Singleton asserts that, since there was no testimony that there was a noticeable marijuana odor on board the ship, and that, since the government failed to refute the testimony of a co-defendant as to Singleton's legitimate purpose for being on board the ship, the jury's verdict should be set aside. The answer is found in many cases that indicate clearly that "[i]t is not neces-

sary for the government to disprove every reasonable hypothesis of innocence, provided that the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *United States v. Cuevas–Esquivel*, 905 F.2d 510, 514 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990). *See also United States v. Molinares Charris*, 822 F.2d 1213, 1219 (1st Cir.1987); *United States v. Rivera Rodriquez*, 808 F.2d 886, 890 (1st Cir.1986). In the present case, sufficient evidence exists to support the jury's verdict.

In *United States v. Lopez*, 709 F.2d 742 (1st Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983), the appellant Lopez, who was arrested while on a vessel, contended that his conviction for possessing and importing marijuana should have been reversed because there was no noticeable marijuana odor on the vessel before the hold was opened. The appellant also contended that the government "failed to prove that [he] knew at the time [he] signed on with the [vessel] that the vessel contained marijuana." *Id.* at 746. In *Lopez*, we held that certain combinations of factors supported a finding of guilt beyond a reasonable doubt. These factors included: (1) the length of the voyage; (2) the amount of marijuana in relation to the size of the ship; and (3) because of cramped quarters, the necessarily close relationship of the crew. In conjunction with inferences that the marijuana could only be unloaded in a clandestine manner, and that, under the circumstances, the shippers of an illegal cargo would not allow innocent bystanders on the vessel, we held that the conviction was supported by sufficient evidence. *See id.* at 748.

In the present case, as in *Lopez*, no marijuana odor was present until the hold was opened. We note, however, that "[r]egardless of whether the marijuana was hidden in scent as well as sight at the time the Coast Guard encountered the vessel, there was evidence from which it could be found that appellant[ ] must have played an active role...." *Molinares Charris*, 822 F.2d at 1219. *See also United States v. Robinson*, 843 F.2d 1, 9 (1st Cir.), *cert. denied,* 488

U.S. 834, 109 S.Ct. 93, 102 L.Ed.2d 69 (1988).

Singleton cites *United States v. Elkins*, 774 F.2d 530 (1st Cir.1985) in support of his contention that his "mere presence" on board the vessel is insufficient evidence of his guilt. In *Elkins*, we found that the district court was incorrect in failing to strike testimony of a Coast Guard officer as to the defendants' lack of surprise upon being arrested because such testimony "invited the jury to infer guilty knowledge from the defendants' failure to respond." *Id.* at 538. In *Elkins*, since errors at trial were not harmless, and the evidence was insufficient to overcome the prejudicial nature of the errors, we remanded for a new trial. *Id.* at 539–540.

Singleton also points to our decision in *United States v. Clotida* as support for his contention that his mere presence is insufficient evidence. *Clotida* involved the appeals of two defendants, Clotida and Chatten, who were convicted of aiding and abetting each other in the possession with the intent to distribute cocaine, and importation of cocaine. The defendants were arrested during a stopover in San Juan, Puerto Rico, while en route from Ecuador to Amsterdam. A Customs Inspector discovered cocaine in three suitcases, and the tags on the suitcases matched those in the possession of Clotida. *Id.* at 1101. Defendant Clotida had possession of the passports, the baggage checks, and the airline tickets. Indeed, the only evidence presented by the government against Chatten was that she travelled with Clotida, and that "clothing, impregnated with cocaine[, was] found in suitcases with baggage tag numbers that matched those in the possession of Clotida." *Id.* at 1105.

In *Clotida*, we reversed as to defendant Chatten since we found that "the only evidence that may be said to connect or tie Chatten to the crime was that she was present at the airport in San Juan, and had accompanied Clotida" on the trip. *Id.* The evidence against Chatten fell short of that required to convict a defendant as an accomplice. Hence, the evidence of mere presence presented by the government against Chatten was insufficient. As indicated in the opinion, to have sustained her conviction would have done violence to the presumption of innocence as well as the beyond a reasonable doubt standard of proof required for conviction. *See id.* at 1105–1106. *See also State v. Tally*, 102 Ala. 25, 65–76, 15 So. 722, 737–741 (1894) (thorough discussion of proof required to convict accomplice).

In the present case, however, considerably more evidence exists to show Singleton's connection with the criminal activity. Testimony at trial revealed that Singleton knew where the flags were, that he helped steer the boat, and that he received permission to board the boat from the owner. This is not a case of "mere presence" since an inference of involvement in the illegal activity could be drawn by a jury from the testimony that Singleton helped steer, knew where the flags were, and received permission from the vessel's owner, who presumably knew the purpose of the voyage, to board the vessel. *See Lopez*, 709 F.2d at 748.

Singleton also urges that our decision in *United States v. Robinson* "is instructive" because in *Robinson* the defendants were crewmembers on the vessel and, in the present case, Singleton was not a crewmember. *See* 843 F.2d at 9. The jury in the present case, however, might indeed have reasonably inferred that Singleton, in effect, was a crewmember since he helped steer the vessel and knew where the flags were. Additionally, we recognize that sufficiency depends on the totality of the evidence, not one particular fact or factor. *See id. See also Molinares Charris*, 822 F.2d at 1219.

Particularly significant is our decision in *United States v. Luciano Pacheco*, 794 F.2d 7 (1st Cir.1986), which was also a case in which arrests were made on a ship. In *Luciano Pacheco*, the defendants, who were appealing from a conviction for aiding and abetting in the possession with the intent to distribute marijuana, contended that they were mere passengers on the vessel. At trial, defendants testified that "when sight seeing together in Colombia,

they were robbed of their worldly possessions ... [and] ... a stranger, overhearing their conversation in English, offered them a ride to Martinique...." *Id.* at 10. We found that "[w]hile the ... 'innocent passenger' defense is certainly within the realm of human possibilities, we have previously noted that juries are perfectly entitled not to believe what may be inherently incredible...." *Id.* (citing *Lopez,* 709 F.2d at 747).

In the present case, as in *Luciano Pacheco,* the evidence presented, and the inferences that might reasonably be drawn therefrom, support a jury verdict of guilty. The testimony at trial shows that the boat was in disrepair, there was no fishing equipment on board, there was no ice or refrigeration for storing fish, and there were no identifying features on the boat other than its name. These factors justify the inference that there was no legitimate purpose for the voyage. *See Molinares Charris,* 822 F.2d at 1219.

As we stated in *Elkins,* 774 F.2d at 539, although an inference of some type of illegal activity is an insufficient basis to find a defendant guilty, in the present case there is additional evidence that Singleton was more than a mere passenger. The following may be enumerated: (1) no one on the ship answered repeated attempts by the Coast Guard to establish radio communication; (2) the hold where the marijuana was stored was unlocked and readily accessible to anyone on board; (3) the crew spent their time in extremely cramped quarters; (4) 3,500 pounds of marijuana were on board a 50 foot boat; (5) Singleton helped steer the boat; (6) Singleton knew where the flags were; and (7) Singleton had permission to be on board.

Singleton's reliance on *United States v. Francomano,* 554 F.2d 483 (1st Cir.1977) is also misplaced. In *Francomano,* we held that the defendants, "young men, short of funds, seeking travel for educational experience and adventure," were merely present on the vessel, and therefore not guilty of the crime charged. *Id.* at 486. *Francomano* involved approximately 50 pounds of marijuana, found floating behind

the vessel. Furthermore, there were no other factors, as exist in the present case, that tied the defendants to the crime. *See id.* at 487. *See also United States v. Mehtala,* 578 F.2d 6, 8 (1st Cir.1978) (same ship and incident, different defendant). Moreover, in *Mehtala* and *Francomano,* since the vessel was carrying 2250 pounds of coffee and 2000 pounds of sugar, there was a legitimate purpose for the voyage. *See Mehtala,* 578 F.2d at 8. *See also United States v. Guerrero–Guerrero,* 776 F.2d 1071, 1075 (1st Cir.1985).

It may be well to note that it is the responsibility of the jury "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences...." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Furthermore, it is within the province of the jury, not that of the reviewing court, to assess the credibility of witnesses. *See Machor,* 879 F.2d at 948. Finally, the jury's verdict should not be overturned unless "the prosecution's failure [to prove guilt] is clear." *Burks,* 437 U.S. at 17, 98 S.Ct. at 2150.

In the present case, the jury was fully instructed as to the elements of the crime. The jury was also instructed that "mere presence at the scene of a crime and knowledge that a crime is being committed is not sufficient to establish that a defendant aided and abetted a crime...." Moreover, the jury did not merely treat all defendants alike, and bring in a single verdict of guilty as to all defendants, but rather, exercised judgment and found three defendants guilty and three not guilty. In light of the careful instructions given to the jury, and the sufficiency of the evidence presented at trial, we ought not, in this case, set aside the jury's verdict.

2. Sentencing

Singleton asserts that the imposition of a 360–month sentence is fundamentally unfair because of the "paucity of the evidence." He adds that the government presented no evidence to show that Singleton "knew, or should have known, the amount of marijuana allegedly involved." Singleton also asserts that the imposition

of a 360–month sentence on a 54–year old man amounts to a "life sentence," and the district court failed to consider whether a "life sentence" is appropriate punishment for this crime. We find no merit to Singleton's assertions.

We note at the outset that "[t]he use of guideline sentencing ... does not deprive a defendant of his constitutional right to due process." *United States v. LaGuardia*, 902 F.2d 1010, 1014 (1st Cir.1990). While we recognize that the imposition of a 360–month sentence is severe, the district court correctly followed the Sentencing Guidelines in computing the sentence. Furthermore, a defendant may file an appeal as to the imposition of a sentence pursuant to the Guidelines only if the sentence:

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater ... term of imprisonment ... than the maximum established in the guideline range ...; or

(4) was imposed for an offense for which there is no sentencing guideline....

18 U.S.C. § 3742(a). *See United States v. Tucker*, 892 F.2d 8, 9–10 (1st Cir.1989). *See also United States v. Zavala–Serra*, 853 F.2d 1512, 1518 (9th Cir.1988) (Eighth Amendment generally offers no relief from a sentence imposed in conformity with the Guidelines).

■ Singleton's assertion that his base offense level should be determined by reference to the amount of marijuana entered into evidence at trial, rather than the amount found on the vessel, is without merit. Sufficient testimony at trial established that the total amount of marijuana on the vessel was in excess of 3,500 pounds (1,600 kilograms), and that amount required a base offense level of 32. *See* U.S.S.G. § 2.D1.1(c)(6). We have stated that "an estimation of the total weight of the amount, based on the testimony of the ... officers, ... was appropriate." *United States v. Hilton*, 894 F.2d 485, 488 (1st

Cir.1990). Furthermore, Singleton was convicted of aiding and abetting in the possession with the intent to distribute the total amount, not the amount entered into evidence at trial. Therefore, the larger amount used in the calculation of the sentence was proper.

■ Singleton also asserts that the imposition of a 360–month sentence on a 54 year old man was improper because it amounts to a sentence of "life" in prison. We note that the defendant's age "is not ordinarily relevant in determining whether a sentence should be outside the Guidelines." U.S. S.G. § 5H1.1. The Guidelines limit consideration of age in determining a sentence to "when the offender is elderly *and* infirm...." *Id.* (emphasis in original). *See also United States v. Daiagi*, 892 F.2d 31, 33–34 (4th Cir.1989) (age has been eliminated as a mitigating factor). Therefore, since Singleton is neither elderly nor infirm, the district court correctly followed the Sentencing Guidelines.

## CONCLUSION

Since we hold that Singleton's conviction was supported by sufficient evidence, and that his sentence in conformity with the Sentencing Guidelines is not appealable, the judgment of the district court is affirmed.