USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1647 JAMES SINGLETON, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jos Antonio Fust , U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Richard J. Shea for appellant. _______________ Carlos A. P rez, Assistant United States Attorney, with whom ________________ Daniel F. Lopez-Romo, United States Attorney, and Jos A. Quiles- _____________________ ________________ Espinosa, Senior Litigation Counsel, were on brief for appellee. ________ ____________________ June 10, 1994 ____________________ CYR, Circuit Judge. Petitioner James Singleton appeals CYR, Circuit Judge. _____________ from a district court order dismissing his motion for post- conviction relief, see 28 U.S.C. 2255, from a judgment of ___ conviction for possessing marijuana, with intent to distribute, in violation of the Maritime Drug Law Enforcement Act (MDLEA).1 See 18 U.S.C. 2; 46 U.S.C. App. 1903(a), (c), (f). Along ___ with a surfeit of lesser grounds, we must assess whether Single- ton was denied effective assistance, see Strickland v. Washing- ___ __________ ________ ton, 466 U.S. 668 (1984), based on trial counsel's failure to ___ object to a jury instruction which effectively directed a verdict on an essential element of the crime charged. We affirm the district court judgment. I I BACKGROUND BACKGROUND __________ Shortly after midnight on January 5, 1988, the United States Coast Guard Cutter DAUNTLESS made radar contact with a vessel approaching on the high seas from the direction of Haiti. Suspecting that the vessel might contain illegal Haitian immigrants, the DAUNTLESS attempted to establish radio communica- tion, but to no avail. Shortly thereafter, Coast Guard Ensign Pulver approached to within thirty yards of the unidentified vessel in a boarding craft, and noted the name MARILYN E and the ____________________ 1Singleton's conviction was upheld on direct appeal in United States v. Doe, 921 F.2d 340 (1st Cir. 1990). _____________ ___ letters "KA" and "JN" on the stern but no home port designation or flag. Pulver made voice contact with a person aboard the MARILYN E who explained that the vessel was en route from King- ston Bay, Jamaica, and bound for Kaison Bank, in the Bahamas, to fish. Ensign Pulver obtained consent to board the MARILYN E from codefendant Willey Gordon, the master. Pulver and the boarding crew found Gordon, Singleton and four others on board the MARILYN E. The MARILYN E was leaky and in serious disrepair. The scant fishing gear on board was inoperable and the vessel was not provisioned for an extended voyage. Shortly after boarding, Pulver asked the master for the certificate of documentation. Gordon asserted that though the MARILYN E was of Jamaican registry, she was carrying no documen- tation. At that point, codefendant Earl McLeish volunteered that he knew where the documentation papers were kept, and soon produced a Coast Guard "bill of sale" form and an expired United States Certificate of Documentation.2 Asked what was in the hold, Gordon responded that it contained ice. Whereupon Pulver requested and received permission to open the hold, which was ____________________ 2Though both documents suggested United States registry, neither the bill of sale nor the expired certificate of documen- tation constituted proper documentation of registry. The bill of sale memorialized a 1986 sale of the MARILYN E by one Clyde Randolph Eubanks to one Hubert Henderson, and was acknowledged in Cateret County, North Carolina. The certificate of documentation was registered to Eubanks but had expired more than one and one- half years earlier. 3 foundtocontainbalesofmarijuanaweighingapproximately3,750 pounds.3 Ensign Pulver requested authorization from the Command- er of the DAUNTLESS to arrest the captain and crew of the MARILYN E. But because the procedures to be followed in arresting the crew, and seizing the vessel, would depend on the nationality of the MARILYN E, Pulver continued to question Gordon. Asked whether there were any flags aboard the MARILYN E, Gordon at first said there were none, but then corrected himself by saying he believed there was one flag forward. Upon overhearing Ensign Pulver's question to Gordon, Singleton located a United States flag and a plain yellow quarantine flag in the fore of the vessel.4 Thus, it remained unclear whether the MARILYN E was a United States vessel, as the United States flag and the dated documentation papers suggested, a Jamaican vessel, as Gordon claimed, or a stateless vessel. In order to ensure the legality of the ensuing arrests and seizure, Ensign Pulver initiated a formal request to obtain ____________________ 3To this point, Singleton's only statement to the Coast Guard had been: "I'm James Singleton and I'm from the United States." 4Our opinion on direct appeal merely stated that the flag was yellow. Doe, 921 F.2d at 342. The district court opinion ___ dismissing appellant's section 2255 motion states that "[t]he yellow flag was later identified as being a flag from Quebec." Singleton v. United States, 789 F. Supp. 492, 494 (D.P.R. 1992). _________ _____________ The confusion is entirely understandable, but we note that the yellow flag in question is a signalling flag indicating "quaran- tine." Howard L. Andrews & Alexander L. Russell, Basic Boating: ________________________________________ ______________ Piloting and Seamanship 65 (2d ed. 1974). In nautical circles, _______________________ it is known, colloquially, as "Quebec," the international phonet- ic representation for the letter "Q," see The ARRL Handbook for ___ ______________________ the Radio Amateur 38-4 (Kirk A. Kleinschmidt ed.) (67th ed. __________________ 1990). 4 Jamaican consent to the enforcement of United States drug laws aboard the MARILYN E,5 and simultaneously sought authorization from the Coast Guard Commandant in Washington, D.C. Several hours later, with authorization from the Coast Guard Commandant and the consent of the Jamaican government, the six persons on board the MARILYN E were arrested and transferred to the DAUNT- LESS, whereupon Miranda warnings were administered to each. Shortly thereafter, the Coast Guard Cutter MOHICAN rendezvoused with the DAUNTLESS, took custody of the MARILYN E, and set out to tow her to Puerto Rico. The MARILYN E proved unseaworthy, however, and she sank (with most of her illicit cargo) en route. II II DISCUSSION DISCUSSION __________ A. The Erroneous Jury Instruction A. The Erroneous Jury Instruction ______________________________ Singleton contends that the trial judge effectively withdrew from the jury a material element of the crime charged under 46 U.S.C. App. 1903(a); viz., whether the MARILYN E was ____ ____________________ 5Had Gordon's unsubstantiated claim of Jamaican registry proven valid, Jamaican "consent" would have been necessary to secure jurisdiction under the criminal statute pursuant to which Singleton and the other defendants were indicted. See 46 U.S.C. ___ App. 1903(c)(1)(C) (authorizing enforcement of United States drug laws on, inter alia, "a vessel registered in a foreign _____ ____ nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States"). 5 "a vessel subject to the jurisdiction of the United States," within themeaning of theMDLEA.6 The jury wasinstructed asfollows: Well, in this particular case, one of the elements that you will have to decide is whether this was a vessel of the United States and there is no real controversy in my _____ __ __ ____ ___________ __ __ own mind about that. The parties, the evi- ___ ____ _____ ____ ___ ____ dence is there. There is [sic] exhibits that _____ __ _____ tell you that this vessel was registered, ____ ______ ___ __________ documented in the United States . . . . __________ __ ___ ______ ______ [46 U.S.C. App. 1903] says basically this, it is unlawful for any person on board a vessel of the United States or on board a vessel subject to the jurisdiction of the United States and in this particular case, I already pointed to you out [sic.] the fact that there is no real controversy about that __ ____ ___________ _____ ____ fact . . . That is what you have to decide, ____ possess with the intent to manufacture and distribute a controlled substance and then sub-section C is the one that defines a ves- sel subject to the jurisdiction of the United States and I have already told you that the _ ____ _______ ____ ___ ____ ___ Marilyn E, with the papers that we have on _______ _ hand, is a vessel subject to the jurisdiction __ _ ______ _______ __ ___ ____________ of the United States. . . . __ ___ ______ ______ . . . If I were to read the elements of this offense, I would tell you as follows: I would tell you that you would have to find in each particular case that each defendant was located on board a vessel subject to the jurisdiction of the United States when this happened. . . . ____________________ 6At the time of Singleton's arrest and conviction, the MDLEA provided: It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance. 46 U.S.C. App. 1903(a) (Supp. 1987). A subsequent amendment extended jurisdiction over a "citizen of the United States . . . aboard any vessel." See Pub. L. 100-690, 7402(a), Oct. 21, ___ 1988, 102 Stat. 4181 (amending 46 U.S.C. App. 1903(a)). 6 (Emphasis added.)7 In its ruling dismissing Singleton's section 2255 motion, see Singleton v. United States, 789 F. Supp. 492, 495 ___ _________ ______________ (D.P.R. 1992), the district court recognized the fair import of the challenged instruction to be that the jurisdictional element of the crime charged had been established to the satisfaction of the court. See United States v. Potes, 880 F.2d 1475, 1478 n.1 ___ _____________ _____ (1st Cir. 1989) ("Because this jurisdictional requirement was an element of the offense, and because it depended upon factual as well as legal determinations, it was for the jury to decide whether it had been satisfied."). The district court ruled, nonetheless, that any error was harmless. Id. at 501-04.8 On ___ appeal, Singleton insists that this instructional error could not have been harmless since it relieved the jury of its ___ responsibility to determine whether the government had proven an essential element of the crime beyond a reasonable doubt. We observe at the outset that the established "princi- ple that collateral review is different from direct review resounds throughout our habeas jurisprudence." Brecht v. Abra- ______ _____ hamson, 113 S. Ct. 1710, 1719 (1993). A presumption of finality ______ ____________________ 7Singleton's trial counsel neither requested an instruction on the jurisdictional element, nor objected to the instruction given. 8The harmlessness ruling was based on the conclusion that the MARILYN E was a "vessel of the United States" under 46 U.S.C. 12111(c)(1), which provides that "until a certificate of documentation is surrendered with the approval of the Secretary, a documented vessel is deemed to continue to be documented . . . ." The government concedes that the quoted provision was enacted after these events took place. 7 attaches to criminal convictions once all direct appeals have been exhausted. Barefoot v. Estelle, 463 U.S. 880, 887 (1983); ________ _______ United States v. Frady, 456 U.S. 152, 164-65 (1982). Post- ______________ _____ conviction relief on collateral review is an extraordinary remedy, available only on a sufficient showing of fundamental unfairness. Brecht, 113 S. Ct. at 1719. Trial errors, even those ______ that implicate Seventh Amendment concerns, are subject to strin- gent "harmless error" review in a collateral proceeding. Id. at ___ 1723 (Stevens, J., concurring). We recently had occasion to survey the developing "harmless error" jurisprudence in a section 2254 case where the petitioner sought to overturn his state court conviction on the basis of an erroneous jury instruction. See Libby v. Duval, 19 ___ _____ _____ F.3d 733, 738-40 (1st Cir. 1994). In Libby, we identified the _____ appropriate "harmless error" inquiry as whether the government can demonstrate that the erroneous instruction "did not have a substantial and injurious effect or influence in determining the jury's verdict." Id. at 18 & n.15; see also Brecht, 113 S. Ct. at ___ ___ ____ ______ 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776 _________ ______________ (1946)).9 The "actual prejudice" review required under Brecht ______ ____________________ 9Libby and Brecht arose under 28 U.S.C. 2254. Thus, one _____ ______ significant element in the rationale underlying Brecht namely, ______ comity concerns based in federalism is plainly lacking in a collateral proceeding arising under 28 U.S.C. 2255. Neverthe- less, we think the Brecht rationale fundamentally anchored in ______ _____________ traditional concerns for finality operates with like vigor in the federal habeas context: "granting habeas relief merely because there is a 'reasonable possibility' that trial error contributed to the verdict, Chapman v. California, 386 U.S. 18, _______ __________ 24, is at odds with the historic meaning of habeas corpus -- to afford relief to those whom society has 'grievously wronged.'" 8 must encompass the record as a whole. Id.; Libby, 19 F.3d at ______ __ _ _____ ___ _____ 740. Under the well-seasoned Kotteakos standard, therefore, _________ trial error is deemed harmless only if the record as a whole permits the reviewing court to conclude: "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." [Kotteakos, 328 U.S. at 765. This test] "is _________ satisfied if it is 'highly probable' that the challenged action did not affect the judg- ment." United States v. Hernandez-Bermudez, _____________ __________________ 857 F.2d 50, 53 (1st Cir. 1988). United States v. Wood, 924 F.2d 399, 402 (1st Cir. 1991) (quoting _____________ ____ United States v. Ladd, 885 F.2d 954, 957 (1st Cir. 1989)). Thus, _____________ ____ the Singleton conviction can withstand collateral review only if it is determined, based on the entire trial record, that the government has demonstrated that a reasonable jury would have found that the jurisdictional element required for conviction under section 1903 was established beyond a reasonable doubt notwithstanding the erroneous instruction. The present inquiry under Kotteakos and Brecht requires _________ ______ close examination of the MDLEA and its jurisdictional predicates. The MDLEA in force in January 1988 proscribed possession, with intent to distribute, marijuana "on board a vessel of the United States or a vessel subject to the jurisdiction of the United __ States." 46 U.S.C. App. 1903(a) (Supp. 1987) (emphasis added). Section 1903(c) provides in pertinent part that the term "vessel subject to the jurisdiction of the United States" includes: ____________________ Brecht, 113 S. Ct. at 1721 (secondary citations omitted). ______ 9 (A) A vessel without nationality; (B) A vessel assimilated to a vessel without nationality, in accordance with Article 6(2) of the 1958 Convention on the High Seas; and (C) A vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States. See 46 U.S.C. App. 1903(c). Thus, jurisdiction would exist ___ under the MDLEA if the MARILYN E were (1) American, as a vessel of the United States; (2) Jamaican, since Jamaican authorities consented to her boarding; (3) a vessel without nationality; or (4) a vessel assimilated to a vessel without nationality.10 Section 1903(c)(1)(B) provides that a "vessel assimi- lated to a vessel without nationality" in accordance with Article 6(2) of the Convention on the High Seas comes within the ambit of the MDLEA. United States v. Passos-Paternina, 918 F.2d 979, 982 _____________ ________________ (1st Cir. 1990), cert. denied, 499 U.S. 982 (1991), and cert. _____ ______ ___ _____ denied 111 S. Ct. 2809 (1991). Article 6(2) provides that "[a] ______ ship which sails under the flags of two or more States, using them according to convenience, may not claim any nationalities in question with respect to any other state, and may be assimilated to a ship without nationality." Convention on the High Seas, Art. 6(2), opened for signature, Apr. 29, 1958, 13 U.S.T. 2312, _____________________ T.I.A.S. No. 5200, quoted in United States v. Ayaraza-Garcia, 819 _________ _____________ ______________ ____________________ 10The trial record amply supports the district court finding that section 1903 jurisdiction was never contested at trial. Indeed, the government and the defendants paid little attention to it. Although there can be no doubt that the jury instruction was premised, however improvidently, on the correct impression that section 1903 jurisdiction was a non-issue as far as the parties were concerned, this weakness in the government's trial presentation is no less vigorously pressed on collateral review. 10 F.2d 1043, 1046-47 (11th Cir.), cert. denied, 484 U.S. 969 _____ ______ (1987); see also United States v. Garate-Vergara, 942 F.2d 1543, ___ ____ _____________ ______________ 1554-55 (11th Cir. 1991), modified, 991 F.2d 662 (11th Cir.), ________ cert. denied, 114 S. Ct. 481 (1993); Passos-Paternina, 918 F.2d _____ ______ ________________ at 982 ("the clear purport of [Article 6(2)] requires that a vessel which sails under the authority of two or more nations be considered 'assimilated to a vessel without nationality.'"). In the context of the MDLEA, Article 6(2) is broadly interpreted, and reaches beyond the literal thrust of its "flying two flags" language to encompass conduct amounting to conflicting claims of nationality. Id. (surveying cases). ___ As to the registry of the vessel, the record reveals that Captain Gordon was evasive, claiming at various times that the MARILYN E carried neither flags nor documentation. Although the captain asserted that the MARILYN E was of Jamaican registry, and a crew member claimed to have sailed out of Kingston Bay, the scant documentation, and the only flags found on board, suggested United States registry. Further, the MARILYN E was not flying the flag of any nation at the time she was sighted, nor did she bear her home port designation or other registry information. See United States v. Matute, 767 F.2d 1511, 1513 (11th Cir. 1985) ___ _____________ ______ (finding absence of home port designation "a clear indication that the crew wanted to be able to manipulate the vessel's 'nationality' on short notice"). Section 1903(c)(1)(B) was meant to encompass this precise sort of ambivalent behavior. See id. ___ ___ (holding that use of Colombian flag and Venezuelan registry 11 papers is "precisely" what statute and Article 6(2) contemplat- ed); Passos-Paternina, 918 F.2d at 981-83 (holding that conflict- ________________ ing claims of registry and carrying different flags "were tanta- mount to sailing under the authority of more than one nation under convenience"). The uncontroverted evidence that the captain and crew repeatedly provided the Coast Guard with equivocal and contradictory registry information satisfies us that a properly instructed jury would have concluded that the United States met its burden of proving, beyond a reasonable doubt, that the MARILYN E was a "vessel subject to the jurisdiction of the United States" within the meaning of 46 U.S.C. 1903. B. Ineffective Assistance of Counsel B. Ineffective Assistance of Counsel _________________________________ The Sixth Amendment provides that criminal defendants are entitled to the effective assistance of trial counsel. Strickland, 466 U.S. at 687. "But 'the Constitution does not __________ guarantee a defendant a letter-perfect defense or a successful defense; rather the performance standard is that of reasonably effective assistance under the circumstances then obtaining.'" Lema v. United States, 987 F.2d 48, 50 (1st Cir. 1993) (quoting ____ _____________ United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991)). ______________ _______ "The habeas court must evaluate the [challenged] conduct from counsel's perspective at the time, considering the totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight." Id. (citations and quota- ___ tions omitted). We indulge "a strong presumption that counsel's 12 conduct falls within a wide range of reasonable professional assistance." Id. (citing Strickland, 466 U.S. at 689). Besides ___ __________ bearing the burden of proving that trial counsel's performance was not within this wide range of reasonable professional assis- tance, Singleton must establish that counsel's performance was sufficiently prejudicial to undermine confidence in the outcome of the trial. Strickland, 466 U.S. at 693-94. Singleton asserts __________ prejudice from several alleged lapses on the part of trial counsel.11 First, he points out that trial counsel did not attempt to suppress the evidence seized aboard the MARILYN E. The uncon- troverted record evidence reveals, however, that the master of the MARILYN E consented to the Coast Guard boarding. Moreover, the MARILYN E was subject to boarding simply on the basis of a reasonable pre-boarding suspicion that she was a stateless vessel. See United States v. Alvarez-Mena, 765 F.2d 1259, 1268 ___ ______________ ____________ (5th Cir. 1985) ("Coast Guard need have only a 'reasonable suspicion' that a vessel is subject to United States law before effecting a seizure of the vessel in international waters."); accord Potes, 880 F.2d at 1478 (dicta). As the MARILYN E flew no ______ _____ flag, bore no home port designation, and could not be raised by radio, there was an adequate basis for the reasonable suspicion needed to stop and board her. See Alvarez-Mena, 765 F.2d at 1268 ___ ____________ ____________________ 11As it resulted in no "prejudice" within the meaning of Strickland, see supra pp. 5-12, we need give no further consider- __________ ___ _____ ation to the "ineffective assistance" claim that trial counsel failed to challenge the jury instruction on section 1903 juris- diction. 13 (finding abundant reasonable suspicion where, inter alia, vessel _____ ____ "flew no flag, and had no stern markings indicating home port or country"). And, of course, Ensign Pulver obtained Captain Gordon's permission before opening the hold. Second, Singleton claims prejudice from counsel's failure to challenge the adequacy of the Miranda warnings. See _______ ___ Miranda v. Arizona, 384 U.S. 436 (1966). The crew received _______ _______ Miranda warnings just prior to their transfer to the DAUNTLESS, _______ moments after their arrests. Although he did speak with Coast Guard personnel before being formally arrested, Singleton has not identified any evidence illegally obtained prior to receiving Miranda warnings. Our review suggests but one possibility; viz., _______ ____ Singleton's admission that he was "from the United States," see ___ supra note 3. But the uncontroverted testimony of Ensign Pulver _____ makes clear that Singleton volunteered this admission. Thus, even assuming that Singleton was in "custody," this statement was not made in response to interrogation. See Miranda, 384 U.S. at ___ _______ 467 (rule applies to "in-custody interrogations"). We find no colorable basis for a cognizable Miranda claim. _______ Third, Singleton faults counsel's failure to move for a separate trial. As a general rule, joinder for trial is proper if issues of fact and law overlap and the practical benefits of a joint trial outweigh each defendant's interest in a separate trial. See, e.g., United States v. Arruda, 715 F.2d 671, 677-81 ___ ____ _____________ ______ (1st Cir. 1983). Singleton has not demonstrated that counsel's 14 failure to press for a separate trial was outside the wide range of reasonable professional assistance. Significantly, codefendant McLeish unsuccessfully moved for severance early in the proceedings. Like Singleton, McLeish pursued a "hitchhiker" defense, claiming that he had been picked up serendipitously by the MARILYN E while adrift at sea. In light of the lack of success with which McLeish's request for severance was met, we cannot say that trial counsel's performance was deficient under the Sixth Amendment. See United States v. ___ _____________ Pellerito, 878 F.2d 1535, 1540 (1st Cir. 1985) (codefendants' _________ failed efforts are relevant in assessing other counsel's decision not to pursue similar tactics). Indeed, the McLeish motion bears all the earmarks of a stalking-horse strategy. "Effectiveness does not require that counsel jump through every conceivable hoop, or engage in futile exercises." Id. (citing United States ___ ______________ v. Cronic, 466 U.S. 648, 656 n.19 (1984) ("useless charade" not ______ required); United States v. Levy, 870 F.2d 37, 38 (1st Cir. 1989) _____________ ____ (similar)). In any event, there has been no showing of prejudice to Singleton resulting from the joint trial. C. Defaulted Claims C. Defaulted Claims ________________ Several additional claims advanced by Singleton suffer from various forms of procedural default, and essentially repre- sent attempts to recast arguments already rejected in connection with the "ineffective assistance" claim.12 Singleton attempts, ____________________ 12The defaulted claims include an attempt to raise the groundless Miranda claim. See supra p. 14. _______ ___ _____ 15 to no avail, see Lopez-Torres v. United States, 876 F.2d 4, 5 ___ ____________ ______________ (1st Cir.), cert. denied, 493 U.S. 979 (1989), to revisit the _____ ______ defaulted claim relating to improper joinder for trial, though it was neither raised before the trial court nor on direct appeal. Furthermore, Singleton challenges his 360-month sentence as having been based on a sentencing guideline determination that he was responsible for possessing, with intent to distribute, 3,750 pounds of marijuana, whereas there was no evidence that he knew the weight, and no evidence that the bales lost at sea contained marijuana. Not only was a substantially similar argument reject- ed on direct appeal, see Doe, 921 F.2d at 347, but "[i]ssues ___ ___ disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. 2255 motion," United States v. Dirring, 370 F.2d _____________ _______ 862, 864 (1st Cir. 1967), cited in Barrett v. United States, 965 ________ _______ _____________ F.2d 1184, 1190 n.11 (1st Cir. 1992). Additionally, this argu- ment does not appear in the section 2255 motion, but first emerged in Singleton's supplemental appellate brief. See Dziur- ___ ______ got v. Luther, 897 F.2d 1222, 1224 (1st Cir. 1990) (holding ___ ______ claims not raised in section 2255 motion will not be reviewed on appeal). Finally, further review of Singleton's challenge to the sufficiency of the evidence, addressed and rejected on direct appeal, Doe, 921 F.2d at 346, is also foreclosed, Tracey v. ___ ______ United States, 739 F.2d 679, 682 (1st Cir. 1984). _____________ Affirmed. Affirmed. ________ 16